IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:06-CV-187-D

| | | |
|---|---|---|
| JIMMY M. POWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DETECTIVE CHRISTOPHER GERMAINE, | ) | |
| and INTERIM POLICE CHIEF ALEX | ) | |
| MONROE, | ) | |
| | ) | |
| Defendants. | ) | |

On April 30, 2008, defendant Alex Monroe ("Monroe"), formerly the interim police chief of Fairmont, North Carolina, moved for summary judgment. On May 20, 2008, plaintiff Jimmy M. Powers ("Powers" or "plaintiff") moved to extend the deadline to respond to Monroe's motion for summary judgment. The Clerk of Court granted plaintiff's motion on that same day, and extended the deadline for plaintiff to respond to Monroe's motion for summary judgment up to and including June 17, 2008. Plaintiff did not timely respond to the motion for summary judgment. Instead, on June 30, 2008, thirteen days after the deadline to respond to Monroe's motion, plaintiff filed a motion requesting an extension of time nunc pro tunc to respond to the motion for summary judgment. For the reasons discussed below, the court denies that motion.

Because plaintiff did not respond to the motion for summary judgment, the court has independently reviewed the entire record in this case. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 415–16 (4th Cir. 1993). For the reasons discussed below, Monroe is entitled to judgment as a matter of law, and his motion for summary judgment is granted.

I.

A.

Plaintiff's latest motion to extend time nunc pro tunc must be viewed in the context of his conduct throughout this case. These facts are reviewed in depth in this court's prior orders. See Powers v. Germaine, No. 7:06-CV-187-D, [D.E. 32] (E.D.N.C. Jan. 10, 2008) (order dismissing former defendant Detective Christopher Germaine) [hereinafter "Dismissal Order"]; id. [D.E. 36] (E.D.N.C. Mar. 6, 2008) (order denying motion for reconsideration) [hereinafter "Recons. Order"]. The court recounts only the highlights here.

On December 26, 2006, plaintiff filed a complaint making serious allegations of police misconduct. See generally Compl. After discovery began, plaintiff failed to respond to then-defendant Detective Christopher Germaine's ("Germaine") interrogatories and requests for production, which were due in early May 2007. See Dismissal Order 2. After nearly four months of unsuccessful attempts to coax plaintiff into answering the interrogatories and requests for production, Germaine filed his first motion to compel on August 29, 2007. See id. at 2–3. The court granted this motion on September 25, 2007. Id. at 3. The court ordered plaintiff to respond to the interrogatories and requests for production, and ordered him to pay $500 in motion-related expenses to Germaine, all not later than October 5, 2007. Id.

Plaintiff ignored the court's order, and on October 12, 2007, Germaine filed his first motion for sanctions. See id. Germaine requested that the court dismiss plaintiff's action against him as a sanction, but the court declined to do so at that time. Id. Instead, the court found plaintiff and both of his attorneys in contempt, ordered plaintiff and both of his attorneys to show cause why they should not be monetarily sanctioned, and commanded plaintiff to serve complete responses to the outstanding discovery not later than November 19, 2007. Id. Further, the court warned plaintiff

pursuant to Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 40 (4th Cir. 1995), that failure to comply could result in dismissal. See Dismissal Order 3–4.

On November 20, 2007—the day *after* the final day to comply with the court's order—plaintiff submitted untimely interrogatory responses that were not made under oath as required by the Federal Rules of Civil Procedure and were not signed by local counsel as required by this court's Local Rules. See id. at 4. At the same time he filed the untimely, unsworn, noncompliant discovery responses, plaintiff and his lead counsel moved this court to extend its deadline nunc pro tunc to show cause why they should not be sanctioned. See id. at 4–5. Plaintiff and his lead counsel offered various excuses for their discovery misconduct, all of which manifestly lacked merit. See id. at 5–13. Accordingly, the court dismissed plaintiff's action against Germaine, sanctioned plaintiff's lead counsel $1000, and admonished plaintiff's local counsel. See id. at 13.

On January 23, 2008, plaintiff moved for reconsideration of the court's Dismissal Order. Recons. Order 1. Plaintiff and his lead counsel argued that new information undermined the court's analysis, that the court committed legal error which resulted in manifest injustice, and once again offered various excuses and justifications for their discovery misconduct. See id. at 2. Plaintiff's arguments were meritless, and the court denied the motion to reconsider. See id. at 2–10. Additionally, because the parties had interpreted the court's Dismissal Order to apply to both defendants rather than simply to Germaine, the court clarified that its Dismissal Order applied only to Germaine, and that the action remained pending against Monroe. See id. at 10.

On April 30, 2008, Monroe moved for summary judgment. On May 20, 2008—the final day to respond to the motion for summary judgment under the Local Rules, see Local Civil Rule 7.1(e)(1), EDNC—plaintiff moved for an extension of time to respond. See Pl.'s First Mot. for Extension of Time 1–2. Plaintiff's counsel stated that he had been delayed by other litigation and

3

was too busy to complete his response to Monroe's motion. See id. Monroe consented to the extension. See id. at 2. Because Monroe consented to the motion, the Clerk of Court granted the motion, and extended the time to respond to Monroe's motion for summary judgment up to and including June 17, 2008. See Local Civil Rule 77.2(c), EDNC.

The June 17 deadline passed without any response from plaintiff. Then, on June 30, 2008—*thirteen days* after the extended deadline to respond had passed—plaintiff filed a second motion for extension of time. See Def.'s Second Mot. for Extension 1–2. Plaintiff's counsel again stated that he was delayed by other litigation, and requested that the court retroactively grant him until July 28, 2008 to respond to the motion for summary judgment. See id. Monroe did not consent to this extension. Id. at 2.

B.

Local Civil Rule 6.1 provides, in relevant part, "[a]ll motions for an extension of time to perform an act required or allowed to be done within a specified time must show good cause, prior consultation with opposing counsel and the views of opposing counsel." Local Civil Rule 6.1, EDNC. Even after an order granting a motion to compel [D.E. 19], an order holding plaintiff and both of his attorneys in contempt [D.E. 21], an order partially dismissing plaintiff's lawsuit and sanctioning plaintiff's lead counsel [D.E. 32], and an order denying reconsideration of that decision [D.E. 36], plaintiff and his lead counsel continue to believe that the civil justice system in the Eastern District of North Carolina runs at their leisure. It does not. Plaintiff has failed to establish good cause for granting the motion to extend time nunc pro tunc, and the motion is denied.

II.

Monroe seeks summary judgment. Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled

4

to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation & emphasis omitted). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita, 475 U.S. at 587–88.

Where, as here, a party does not respond to a motion for summary judgment, the court may not grant summary judgment on this basis alone. See Custer, 12 F.3d at 416. Because Federal Rule of Civil Procedure 56 "requires that the moving party establish, in addition to the absence of a dispute over any material fact, that [the moving party] is 'entitled to judgment as a matter of law,'" a court addressing an unrebutted motion for summary judgment must independently review the entire record to determine whether summary judgment is appropriate. Id. (quoting Fed. R. Civ. P. 56(c)).

A.

The court reviews the facts in the light most favorable to plaintiff, the non-moving party. See, e.g., United States v. Diebold, 369 U.S. 654, 655 (1962) (per curiam). On December 23, 2004, plaintiff and several of his friends went Christmas shopping at the Family Dollar store in Fairmont, North Carolina. See Alex L. Monroe Aff. ¶ 4 [D.E. 42]; Jimmy M. Powers Dep. 46:10–13, Nov. 6, 2007 [D.E. 42-2]. As plaintiff walked out the door of Family Dollar, the store clerk came out and accused him of shoplifting. See Powers Dep. 51:2–8. Plaintiff denied the accusation, and allowed the clerk to inspect the contents of his pockets. Id. at 51:14–20. However, the clerk did not believe

5

plaintiff, and said that she was going to call the police. See id. at 51:23–52:4.

Plaintiff was apprehensive because, the week prior, a Fairmont police officer named Forster Obershea ("Obershea")[1] had told plaintiff that he was going to get plaintiff and all of his friends "off the street." See id. at 52:8–25. Plaintiff and his friends therefore began walking towards plaintiff's aunt's house, where they believed that Obershea would lack authority over them. See id. at 52:8–19; 57:1–7. When the Family Dollar clerk called the police, Obershea responded. See id. at 55:4–8; Monroe Aff. ¶ 4.

Obershea stopped plaintiff and one of plaintiff's friends and ordered them to place their hands on his police car so that he could search them. Powers Dep. 57:8–13. As Obershea began searching plaintiff's friend, plaintiff began to step away from the police car. Id. at 115:2–5. Obershea saw plaintiff's movement, turned and grabbed him, and stated, "Where are you going?" Id. at 115:6–8. Obershea threw plaintiff against the hood of the police car. Id. at 115:10–13. Plaintiff bounced off the hood, and then escaped from Obershea and ran away. Id. at 115:13–16.

Obershea pursued plaintiff on foot and called for backup. Id. at 115:17–20; Monroe Aff. ¶ 5. At that time, Monroe was serving as the Interim Police Chief of Fairmont. Monroe Aff. ¶ 3. Monroe responded to Obershea's call for backup. Id. ¶ 7. Monroe drove to the location that Obershea had provided, and saw plaintiff (who matched the description that Obershea had provided) standing on the front porch of a house. See id. ¶¶ 6, 8. Monroe exited his police car and gave commands to plaintiff, who was walking down from the porch. Id. ¶ 9. Monroe remained on one side of his police car with his service weapon drawn, and plaintiff walked down to approximately one car length away on the opposite side of Monroe's police car. Powers Dep. 74:19–22, 116:8–17.

---

[1] Plaintiff refers to Obershea as "Foster" throughout the record. See, e.g., Powers Dep. 52:23–25.

At that moment, Detective Germaine of the Robeson County Sheriff's Office rounded the corner from the other side of the house on foot. See id. 73:1–3; Monroe Aff. ¶ 10. Germaine approached plaintiff from the left, grabbed plaintiff's left shoulder and spun plaintiff around towards him, and physically engaged plaintiff. See Powers Dep. 73:7–20; Monroe Aff. ¶ 10. Germaine held his service weapon in his right hand. See Powers Dep. 74:6–11. Germaine's service weapon hit plaintiff in the chest, and plaintiff and Germaine fell to the ground. See id. at 74:13–15; Monroe Aff. ¶ 10. Germaine fell on top of plaintiff, and his service weapon discharged, striking plaintiff in the neck and causing injury. See Powers Dep. 74:13–15; Monroe Aff. ¶¶ 10–12.

B.

Plaintiff filed suit on December 26, 2006, alleging causes of action against Monroe for false arrest under both federal law and North Carolina law. See Compl. ¶¶ 21–23, 29–31. The court turns first to plaintiff's federal-law claim against Monroe under 42 U.S.C. § 1983. See Compl. ¶¶ 1, 21–23.

Monroe argues that he is entitled to qualified immunity on plaintiff's federal-law claim. Def.'s Mem. in Supp. of Mot. for Summ. J. 6. In determining whether a defendant is entitled to qualified immunity, a court undertakes a two-part analysis. See, e.g., Saucier v. Katz, 533 U.S. 194, 200–02 (2001); Miller v. Prince George's County, Md., 475 F.3d 621, 626–27 (4th Cir. 2007); Gomez v. Atkins, 296 F.3d 253, 261 (4th Cir. 2002). First, a court determines whether the facts show that the officer's conduct violated plaintiff's constitutional right. See, e.g., Miller, 475 F.3d at 626. If so, then the court asks whether the right asserted was clearly established at the time of the alleged violation. Id. at 627. The latter inquiry requires the court to consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. A police officer is entitled to summary judgment on qualified immunity grounds

7

unless the answer to both prongs of the two-part analysis is affirmative. E.g., Miller, 475 F.3d at 627.

In analyzing a false arrest claim, the court must determine whether an objective officer in the defendant's position could reasonably have concluded that there was probable cause for an arrest. See, e.g., id.; Gomez, 296 F.3d at 261–62. The question is not whether probable cause actually existed, but whether an objective officer could reasonably have believed that it did. E.g., Gomez, 296 F.3d at 261–62. A court must remember that probable cause is a fluid, common-sense concept that must be viewed through the eyes of law enforcement officials. See id. at 262 (citing Illinois v. Gates, 462 U.S. 213, 232 (1983)). Probable cause exists when "the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Id. (quotation omitted).

Here, an objective officer in Monroe's position could reasonably have concluded that he had probable cause to arrest plaintiff. Monroe responded to a request for backup after plaintiff fled from the presence of an officer who was investigating a store clerk's allegation that plaintiff had shoplifted. An objective officer in Monroe's position could reasonably have concluded that there was probable cause to arrest plaintiff for shoplifting or for obstructing a police investigation. See, e.g., United States v. Mitchell, 58 F. App'x 14, 15–16 (4th Cir. 2003) (per curiam) (unpublished) ("Mitchell provided probable cause for his arrest by attempting to flee police . . . ."); State v. McNeill, 54 N.C. App. 454, 456, 283 S.E.2d 565, 567 (1981) ("When defendant fled, [the police officer] then had probable cause to arrest him for obstructing [a police] investigation."); see also Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002) ("To prove an absence of probable cause, [plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude

8

that [he] was violating the [law]."); cf. Illinois v. Wardlow, 528 U.S. 119, 124–26 (2000) (flight from officers triggered reasonable suspicion for Terry stop). Even viewing the facts in the light most favorable to plaintiff, see, e.g., Gomez, 296 F.3d at 260–61, Monroe is entitled to summary judgment on qualified immunity grounds on plaintiff's federal-law false arrest claim. Simply put, Monroe did not violate plaintiff's constitutional rights.

C.

Plaintiff also brings a supplemental state-law false arrest claim against Monroe. See Compl. ¶¶ 1, 29–31. Plaintiff sues Monroe in his individual capacity. Id. ¶ 8.

Under the North Carolina doctrine of public official immunity, "a public officer who exercises his judgment and discretion within the scope of his official authority, without malice or corruption, is protected from liability." McCarn v. Beach, 128 N.C. App. 435, 437, 496 S.E.2d 402, 404 (1998). "In order to hold an officer personally liable in his individual capacity, a plaintiff must make a prima facie showing that the officer's conduct is malicious, corrupt, or outside the scope of his official authority." Id. Plaintiff's complaint contains no allegation that Monroe acted maliciously, corruptly, or outside the scope of his official duties, and plaintiff has presented no evidence to this effect.

Further, for the same reasons discussed above with respect to plaintiff's federal-law false arrest claim, Monroe had probable cause to arrest plaintiff in any event. See, e.g., Thomas v. Sellers, 142 N.C. App. 310, 315, 542 S.E.2d 283, 287 (2001) ("The test for whether probable cause exists is an objective one—whether the facts and circumstances, known at the time, were such as to induce a reasonable police officer to arrest, imprison, and/or prosecute another." (quotation omitted)). "Probable cause is an absolute bar to a claim for false arrest." Williams v. City of Jacksonville Police Dep't, 165 N.C. App. 587, 596, 599 S.E.2d 422, 430 (2004). Accordingly,

9

Monroe is entitled to summary judgment on plaintiff's state-law false arrest claim.

III.

For the reasons discussed above, plaintiff's motion for extension of time [D.E. 45] is DENIED, and Monroe's motion for summary judgment [D.E. 40] is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED. This 15th day of July 2008.

*/s/ James Dever*

JAMES C. DEVER III
United States District Judge